IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TONY LEE MOSELEY,            ) | |
|                                ) | |
|     Plaintiff,            ) | |
|                                ) | |
| v.                                      ) | CIV. ACT. NO. 2:13cv328-TFM |
|                                ) | (WO) |
| CAROLYN W. COLVIN,               ) | |
| Acting Commissioner of Social Security,   ) | |
|                                ) | |
|     Defendant.           ) | |
|                                ) | |

**MEMORANDUM OPINION**

**I. PROCEDURAL HISTORY**

Plaintiff Tony Lee Mosely ("Moseley") applied for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that he is unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that Moseley was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

1

have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be AFFIRMED.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .
>
> To make this determination, the Commissioner employs a five-step, sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.
>
> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial

---

[2] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. THE ISSUES

#### A.   Introduction

Moseley was 49 years old when he applied for supplemental security income and has completed the ninth grade. (R. 40, 130). He has prior work experience as a handyman and scrap metal worker. (R. 150). Moseley alleges that he became disabled on February 1, 2010, due to a stroke, a heart condition, back problems, memory problems, and heavy legs. (R. 42-43, 149, 187). After the hearing on August 23, 2011, the ALJ found that Moseley suffers from minimal cervical and lumbar degenerative joint disease; status post cerebral vascular accident; anxiety; depression; and borderline intellectual functioning. (R. 15). The ALJ found that Moseley is unable to perform his

past relevant work, but that he retains the residual functional capacity to perform light work with the following limitations:

> The claimant can lift and carry up to 10 pounds frequently, 20 pounds occasionally.  He requires a sit/stand option permitting him to alternate positions throughout the workday.  He can use his feet for no more than occasional operation of foot controls.  He is unable to climb ladders and scaffolds, and he cannot work around unprotected heights or hazardous machinery.  He should avoid exposure to extreme heat and cold.  The claimant is limited to work involving simple, routine, and repetitive tasks that do not require reading as part of the job duties.

(R. 20).  Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Moseley can perform, including work as a production assembler, electronics worker, and assembler of electronics accessories.  (R. 25).  Accordingly, the ALJ concluded that Moseley is not disabled.[3]  (R. 26).

### B.     Plaintiff's Claim

Moseley's sole issue for the Court's consideration is whether the "ALJ erred in finding that [Moseley] has the residual functional capacity to perform light work with certain exertional and non-exertional limitations." (Doc. No. 13, Pl's Comp., p. 5).

---

[3] Moseley represented himself *pro se* during the hearing before the ALJ.

> "A hearing before an ALJ is not an adversarial proceeding" and, whether or not the applicant is represented, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam).  The ALJ has a special duty to ensure the record demonstrates that an *unrepresented* claimant who did not waive counsel was not prejudiced by the lack of counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam).  By implication, where counsel has been waived, the special duty to develop the record does not take effect.  *See id.*

*Robinson v. Astrue*, 235 Fed. Appx. 725, 727 (11th Cir. 2007).  Moseley expressly waived his right to counsel during the hearing.  (R. 32-33, 127).  Thus, the ALJ's special duty to develop the record did not take effect in this case.  Moseley is represented by counsel in the proceedings before this court.

## IV. DISCUSSION

Moseley asserts that the ALJ's determination that he has the residual functional capacity to perform light work with limitations is not supported by substantial evidence. Specifically, he argues that there is no evidence that he is able to stand and/or walk off and on for a total of six hours during an eight hour work day. He contends that the ALJ should have fully developed the record by obtaining a residual functional capacity assessment from a medical specialist.

An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level. . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."). *See also Lewis*, 125 F.3d at 1440 ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."). "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)." *Peeler v. Astrue*, 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010).

In determining the effect of Moseley's impairments on his residual functional capacity to perform light work, the ALJ found:

5

> There are significant indications of medication noncompliance in the record. The claimant's pharmacy records show that he filled 30-day courses of his prescriptions on April 13, 2010, but he did not fill any more prescriptions until January 30, 2011 (Exhibit 9F, pgs. 3-4). Although he sought treatment at Lister Hill Health Center on December 2, 2010, and was prescribed medications, he did not fill them at that time (Exhibit 8F, pg. 8; 9F, pg. 5). Apparently, the claimant went for approximately eight months between May 2010 and January 2011 without any medication for his hypertension and other chronic complaints. On May 10, 2011, he reported that he had been out of Norvasc (amlodipine) for two weeks, but his pharmacy records actually show that he had not filled this prescription since January 2011, indicating that he had actually been off this medication for more than two months (Exhibits 8F, pg. 5; 9F, pgs. 4-5). Considering his history of mild stroke, it is particularly important for the claimant to maintain good blood pressure control, but fortunately, it does not appear that there have been any serious consequences arising from his failure to take his blood pressure medications as prescribed. It is possible, however, that some of the claimant's alleged problems, such as headaches and feelings of heaviness in his legs, could result from inadequate blood pressure control owing to poor medication compliance. In limiting the claimant to a reduced range of light work, the undersigned has considered his hypertension and the symptoms that could reasonably be expected to result from continued medication compliance issues.

(R. 22).

When discussing the effects of Moseley's previous stroke on his residual functional capacity to perform work, the ALJ also found:

> With regard to the claimant's history of stroke, the medical evidence of record does not indicate that he has any significant residual effects. Following his discharge from the hospital in February 2010, his medical treatment records from Dr. Widhani's office indicate that he did not demonstrate any focal weakness or other neurological abnormalities (Exhibit 2F). When Dr. Hayden examined the claimant in August 2010, he noted no signs of any sensory, motor, or reflex deficiencies, and he stated that the claimant appeared to retain function and to use all of his extremities well (Exhibit 4F). He complained of staggering in February 2011, and in June 2011, nurse practitioner Duncan noted that he was having neurological symptoms, including staggering gait and paresthesias in both arms, and she referred him to neurology (Exhibit 8F, pgs. 4-6). The undersigned has considered any neurological symptoms the claimant may experience in

>limiting him to light work with a sit/stand option and no exposure to unprotected heights or hazardous machinery.

(R. 22-23).

The ALJ's findings regarding Moseley's ability to stand and/or walk are fully supported by the evidence. The medical records demonstrate that, although Moseley had some difficulties standing and walking immediately after suffering a stroke in February 2010, his condition steadily improved. For example, on February 4, 2010, Moseley was admitted to Community Hospital, complaining of dizziness and that his "legs got really tired." (R. 211). Dr. Leena Bhasin's diagnostic assessment was acute versus subacute stroke. (R. 212). The attending physician noted that after resting "he did not have any further episode of dizziness and he walked the entire stretch of the room . . . without any support and there was no wobbliness noted. The gait was within normal limits." (*Id*.).

During a follow-up appointment with Dr. Nitin Widhani on February 15, 2010, Moseley complained of "leg cramps especially when he walks around." (R. 235). Upon examination, however, Dr. Widhani noted that Moseley "[d]enies weakness, numbness, tingling or incoordination. Dizziness and lightheadedness are much better than before. Denies any tremors, seizures, gait problems, memory problems." (R. 236). On March 9, 2010, Moseley returned to Dr. Widhani's office complaining of severe back pain after "trying to change his [television] antennae at home." (R. 230). Dr. Widhani found "no radiation of pain" and that "[h]e does not have any tingling or numbness in his lower extremity." (R. 231). The physician prescribed Lortab to treat Moseley's headaches and backaches and recommended an x-ray of his lumbar spine. (R. 232). On March 16,

2010, Moseley denied any dizziness symptoms. (R. 229). On March 25, 2010, Moseley underwent an exercise stress test. (R. 244). A physician noted Moseley "walked a total of 6 minutes to a rate of 165" and that "[t]he test was stopped due to fatigue and leg weakness." (*Id*.). The physician, however, concluded that the graded exercise test was normal. (*Id*.).

On August 24, 2010, Dr. Steven M. Hayden, a family practitioner, conducted a consultative examination, finding normal leg stability, range of motion, strength, muscle tone, gait, station, and deep tendon reflexes. (R. 256-57). Dr. Hayden also found Moseley "had mild stroke but appears to retain function" and "[p]hysically he has use of all extremities." (R. 258). The medical records also indicate that Moseley did not refill his hypertension medication as frequently as recommended by his physicians. (R. 287, 300-07).

During the hearing, Moseley also testified about his ability to walk and stand. Moseley stated that his legs "get heavy" and "cramps a little bit," but that he is able to walk the length of "probably a football field" before having to sit. (R. 42, 46, 52). He also stated that he is able to stand "45 minutes probably, might could stay longer than that, it just all depends" and remain seated "probably several hours." (R. 52-53). Thus, the evidence fully supports the ALJ's findings concerning Moseley's ability to perform light work with a sit/stand option.

Moseley argues that the ALJ's determination is not supported by substantial evidence because the ALJ failed to secure a physical residual functional capacity determination from a physician. The plaintiff's argument conflates the nature of residual

functional capacity with the responsibility for making the residual functional capacity determination. The Commissioner's regulations clearly show who is responsible for making the residual functional capacity determination when a case has reached the administrative law judge hearing.

> If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.

20 C.F.R. § 404.1546.

The essential question raised by the plaintiff is whether it is necessary to have a residual functional capacity assessment by a medical provider as part of the evidence which an ALJ must consider in reaching a determination. In this case, the answer is no. While the ALJ has the responsibility to make a determination of a plaintiff's RFC, it is the plaintiff who bears the burden of proving his RFC, i.e., he must establish through evidence that his impairments result in functional limitations and that he is "disabled" under the Social Security Act. *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations).

In support of his position regarding his RFC, Moseley relies on *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003), and *Hernandez v. Barnhart*, 203 F. Supp. 2d 1341 (S.D. Fla. 2002), for the proposition that the Commissioner's residual functional capacity assessment must be supported by a residual functional capacity assessment of a treating or examining physician. More recently, however, in *Packer v. Astrue*, 2013 WL 593497, *3 (S.D. Ala. Feb. 14, 2013), the court rejected the absolutism of requiring a RFC assessment by a treating physician, noting that "numerous courts had upheld ALJ's determinations notwithstanding the absence of an assessment performed by an examining or treating physician." Like those other courts, this court rejects the seemingly mandatory requirement that the Commissioner's fifth-step burden must be supported by an RFC assessment of a physician. The ALJ had before her sufficient medical evidence from which she could make a reasoned determination of Moseley's residual functional capacity. Thus, she was not required to secure a residual functional capacity assessment from a medical source.

Moselely argues that the ALJ failed to apply SSR 83-10 properly because he did not consider the frequency or amount of time Moseley would need to alternate sitting or standing when determining his residual functional capacity to perform light work. At the administrative hearing, the ALJ posed a hypothetical to the vocational expert which included a sit/stand option. "Although the ALJ did not specify in the hypothetical question posed to the VE the frequency with which Plaintiff needed to change his sit/stand position, the ALJ's instruction to the VE to include a sit/stand option . . . contains the reasonable 'implication' that 'the sit/stand option would be at [Plaintiff's]

own volition.'"  *Hart v. Colvin*, No. 5:12cv156-EMT, 2013 WL 4736841, *15 (N.D. Fla. August 30, 2013) (citing *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) (per curiam)).  *See also Emory v. Astrue*, No. 1:11cv2908-TWT-JFK, 2013 WL 1010660, *8 (N.D. Ga 2013) (quoting *Lucas v. Astrue*, 2012 WL 6043089, *4 (N.D. Ala. Dec. 4, 2012) (A "'common-sense reading of the ALJ's RFC assessment and the hypothetic question he posed to the BE is that the ALJ contemplated a sit/stand option at will.'"). Furthermore, Moseley has failed to present evidence showing that his need to sit or stand would prevent him from performing the jobs identified by the vocational expert, which he must do in order to be found disabled.  *See Williams*, *supra*;  *Emory*, *supra*;  *Hart*, 2013 WL 4736841, *16.

Moseley also argues that "if [he were] limited to sedentary work and in the category of closely approaching advanced age, a finding of disabled is mandated by Rule 201.10 of the Medical Vocational Guidelines."  (Doc. No. 13, Pl's Comp., p. 7).  The problem with Moseley's argument is that 201.00 is applicable to claimants with an RFC of sedentary work.  In this case, substantial evidence supports the ALJ's determination that Moseley has the residual functional capacity to perform light work with restrictions. Thus, Moseley's claim that the ALJ erred by failing to consider his ability to perform sedentary work along with his age at the time of the hearing is without merit.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's findings.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  The ALJ evaluated all the evidence before her which led her to conclude that Moseley is able to perform light

work with limitations.  It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Instead the court reviews the record to determine if the decision reached is supported by substantial evidence.  *Moore v. Barnhart*, 405 F.3d 108, 1211 (11th Cir. 2005).  Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Given this standard of review, the court concludes that the ALJ's residual functional capacity assessment is consistent with the medical evidence as a whole.  After a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Moseley's residual functional capacity to perform light work with limitations.

### V.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence.  Accordingly, it is ORDERED that the decision of the Commissioner be and is hereby AFFIRMED.

DONE this 31st day of March, 2014.

       /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE